THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JAMES KERWIN, Defendant-Appellant.

Fifth District   No. 5—90—0443

Opinion filed March 15, 1993.

RARICK, J., dissenting.

Daniel M. Kirwan and Stanley P. Stasiulis, both of State Appellate
Defender's Office, of Mt. Vernon, for appellant.

Henry Bergman, State's Attorney, of Carlyle (Norbert J. Goetten, Stephen E. Norris, and Diane L. Campbell, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

After a bench trial, defendant, James Kerwin, was found guilty of three counts of aggravated criminal sexual assault in violation of section 12—14(b)(1) of the Criminal Code of 1961 (the Code) (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(b)(1)). The trial court sentenced him to 15 years' imprisonment. We affirm.

On appeal, defendant contends: (1) the trial court erred in assessing the credibility of the child witness; (2) defendant received ineffective assistance of counsel; and (3) the trial court considered improper aggravating factors in sentencing defendant.

On August 3, 1989, the State's Attorney filed an information charging that defendant committed aggravated criminal sexual assault by placing his fingers in the vagina of his nine-year-old daughter, L.K. On December 12, 1989, the State's Attorney charged defendant with two additional counts, stating that defendant placed his penis in L.K.'s vagina and in L.K.'s mouth. Defendant pleaded not guilty to all three counts but waived a jury, so the matter proceeded to a bench trial. In this appeal, a full recitation of the facts is unnecessary, and relevant facts will be included as we address the individual issues.

On appeal, defendant first contends that the trial court erred in assessing the credibility of the complaining witness, L.K. At trial, she testified that defendant touched her "between her legs" with his fingers, penis and tongue on numerous occasions starting when she was seven years old and continuing for approximately two years. L.K. also testified that during that time her father made her put her mouth on his penis. In addition to L.K.'s in-court testimony, the trial court viewed two video-taped interviews of L.K. by Cecelia Rumney, youth and victims counselor for the Colorado Springs police department, where L.K. described the incidents of sexual abuse by defendant in greater detail. Defendant testified that although he accepted the fact that L.K. had been sexually abused, he was not the abuser. Defendant further testified that after he and his ex-wife, Rita Emig, had a bitter dispute, she threatened to prove defendant molested L.K. The court also heard testimony on behalf of defendant by Steve and Patrick Kerwin, two of defendant's three

sons, L.K.'s fourth-grade teacher, and Steve Kerwin's girl friend. In reaching its decision, the trial court stated:

"THE COURT: Court, of course, has heard the evidence these last two days. Beginning with the testimony of [L.K.]. Court is convinced beyond a reasonable doubt that the defendant is guilty. There is no way a nine year old girl, girl that age can make up something like that. You know, this Court has been in court long enough, I am not saying I know every time someone is lying to the Court, I don't.

But, I am confident in this case [L.K.] was telling the truth. You can not, the things that she could testify to are not within the experience of a girl that age, not only just the, the set of acts, but the whole totality of the circumstances. No one comes up with the fact, for instance, that they observe their father masturbating in front of them. It was something that is really not even related to this and yet the father has admitted to having done that when she was in the room, not being aware that she was awake. But, that basically, the whole nature of the case is disgusting. No way a nine year old, eight, nine, ten year old girl is going to come up with that type of evidence unless indeed it happened. There is no way that she is going to testify against her father, particularly especially one to whom she had a close relationship with unless it is true, unless there is some strong reason to try to get back for some reason. And there is absolutely no evidence of that, Court is convinced that the act of digital penetration, the act of penile penetration and the act of touching with the tongue did in fact occur within the period of time that the witness described."

■■ Defendant argues that the trial court relied upon the unsupported generalization that children cannot make false accusations of sexual assault, failing to assess L.K.'s individual credibility. In support of this argument, defendant cites numerous authorities which attest that children testifying about sexual abuse cannot be presumed credible just by virtue of their age and the subject matter of their testimony. This court does not dispute such an assertion. Clearly, it would be error for a fact finder to generally assume that every child under a certain age is incapable of fabricating incidents of sexual abuse. Although defendant would have us find that the trial court made such an improper assumption in the case at bar, we do not agree. As the State correctly points out, it is not improper for a fact finder to consider the sexual knowledge of the tes-

tifying child witness to determine if the knowledge is appropriate for a child of that age. (*People v. Coleman* (1990), 205 Ill. App. 3d 567, 563 N.E.2d 1010.) Admittedly, the trial court made some extraneous remarks regarding a nine-year-old girl's sexual knowledge. Taken in the context in which those remarks were made, however, this court does not find that the trial court failed to properly assess L.K.'s credibility. The trial judge clearly stated: "I am confident in this case [L.K.] was telling the truth."

A reviewing court has neither the duty nor the privilege to substitute its judgment as to the credibility of witnesses for that of the trier of fact. (*People v. Novotny* (1968), 41 Ill. 2d 401, 244 N.E.2d 182.) A finding based on the evaluation of the witness' credibility will be sustained unless it can clearly be said that it was manifestly erroneous. (*People v. Nelson* (1974), 58 Ill. 2d 61, 317 N.E.2d 31.) In the case before us, the trial court heard testimony in support of defendant as well as L.K.'s testimony. The trial court found L.K.'s testimony to be more credible than defendant's and defendant's witnesses. The record shows that the trial court's decision was affected by L.K.'s detailed account of the incidents of sexual abuse, but we do not find that the trial court relied on unsupported generalizations in its assessment of L.K.'s credibility. Therefore, this court will not disturb the trial court's verdict.

■■ We next turn to defendant's contention that he was denied effective assistance of counsel. Defendant argues that defense counsel's errors prejudiced defendant and denied him a fair trial in that defense counsel failed to object to inadmissible evidence and failed to secure defendant's ex-wife as a witness.

The constitutionally guaranteed assistance of counsel has not been provided if defendant can prove counsel's representation fell below an objective standard of reasonableness and that counsel's shortcomings were so serious as "to deprive the defendant of a fair trial, a trial whose result is reliable." (*Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064; *People v. Albanese* (1984), 104 Ill. 2d 504, 525, 473 N.E.2d 1246, 1255.) Defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Albanese*, 104 Ill. 2d at 525, 473 N.E.2d at 1255.) Judicial scrutiny of counsel's performance must be highly deferential. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065; *Albanese*, 104 Ill. 2d at 525, 473 N.E.2d at 1255.

Defendant argues that he received ineffective assistance of counsel because defense counsel failed to secure defendant's ex-wife as a witness and failed to object to inadmissible evidence. In a post-trial hearing, defendant stated that his ex-wife probably would have testified against him. We find no reversible error in defense counsel's strategy of not calling this adverse witness. Defendant also argues that defense counsel erred in not objecting to portions of the videotaped interview of L.K., expert testimony on post-traumatic stress syndrome, and hearsay testimony by some of the State's witnesses. A thorough examination of the record reveals that the trial court based its decision on the credibility of L.K.'s testimony. Defendant does not dispute defense counsel's performance in regard to that evidence. Defendant simply has not established that the result of the proceeding would have been different but for counsel's errors. Therefore, we do not find that defendant received ineffective assistance of counsel.

■ Defendant's final contention is that the trial court relied on improper aggravating factors in sentencing defendant to 15 years' imprisonment. In sentencing defendant, the trial court considered it an aggravating factor that defendant's conduct caused and threatened serious harm to L.K. Defendant argues that harm is inherent in the offense of aggravated criminal sexual assault and cannot be considered as an aggravating factor. Defendant's argument is without merit. The statute under which defendant was convicted requires that the victim be under 13 years of age, that defendant be more than 17 years of age, and that an act of sexual penetration occur. (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(b)(1).) Harm is not inherent in the offense. The determination and imposition of a sentence is a matter of considerable judicial discretion, and the standard of review is whether the trial court abused its discretion in imposing the sentence. (*People v. Younger* (1986), 112 Ill. 2d 422, 427, 494 N.E.2d 145, 147.) The statutory range of imprisonment for a Class X felony is 6 to 30 years. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1.) In addition to the trial court's consideration of the emotional harm suffered by the minor child, the trial court took into account the mitigating factors that defendant acted under strong provocation and relinquished his parental rights. Since harm is not inherent in the offense for which defendant was convicted, it was not improper for the trial court to consider the emotional harm suffered by the minor child as an aggravating factor. Therefore, we find no abuse of discretion in sentencing defendant to 15 years' imprisonment.

For the foregoing reasons, the judgment of the circuit court of Clinton County is affirmed.

Affirmed.

MAAG,* J., concurs.

JUSTICE RARICK, dissenting:

I dissent. Based upon my review of the record, I believe defendant was deprived of effective assistance of counsel and a fair trial.

This sordid situation appears to have its genesis in a bitter child custody dispute. Following a dissolution of their marriage in May of 1988, defendant took physical custody of his sons while defendant's ex-wife, Rita, took custody of L.K. The following month, L.K. came to stay with defendant for the summer months. Sometime in August of 1988, Rita advised defendant she was unable to care for L.K., so defendant enrolled the child in a local grade school. Rita then moved to Colorado and resided in a lesbian relationship with a woman named Bernie. According to defendant, Rita had advised defendant that she was engaged in a lesbian relationship shortly before the dissolution of their marriage.

At some point thereafter, defendant advised Rita's mother and other relatives of Rita's lifestyle. According to defendant, Rita then contacted him and told him that she intended to get even with him for ruining her reputation and that she planned to bring sexual abuse charges against him. Defendant then contacted the Department of Children and Family Services (DCFS) and the local State's Attorney in an attempt to obtain custody of L.K. but was advised to obtain private counsel. Unable to do so for financial reasons, defendant attempted to file for change of custody *pro se*.

In February 1989, Rita advised her mother that DCFS wanted her to pick up L.K. and deliver the child to Rita. The grandmother asked to visit the child and then turned the child over to Rita rather than returning the child to defendant. Rita took L.K. to Colorado. Shortly thereafter, an investigation was undertaken by DCFS with respect to allegations of sexual abuse by defendant. This investigation later concluded that the allegations were unfounded.

---

*Justice Harrison participated in oral argument. Justice Maag was later substituted on the panel and has read the briefs and listened to the audiotape of oral argument.

In June of 1989, abuse charges again surfaced. While in Colorado, Rita and Bernie took L.K. to a youth and victims counselor with a local police department where the videotaped interviews in question were made on June 7, 1989, and July 13, 1989. Colorado authorities then contacted DCFS in Illinois, and the instant charges were subsequently filed against defendant.

Copies of the videotaped interviews were admitted into evidence and viewed by the trial court. In the first tape, L.K. described various instances of sexual contact between defendant and herself. In the second tape, L.K. described additional acts of sexual contact between defendant and herself in more explicit detail and continued on to relate instances of sexual abuse involving an adult neighbor and her brothers, suggesting that the neighbor had paid defendant in order to engage in such sexual contact. L.K. also related another incident involving the neighbor and yet other children. In the second tape, L.K. also stated that she had talked with Bernie every day about these matters and they discussed the punishment defendant should receive such as placing defendant's hands in a garbage disposal and turning it on. L.K. also related that after her discussions with Bernie she concluded her "brothers were prostitutes except they were boys."

When the State moved to admit the tapes into evidence, the State's Attorney advised the court that the second tape contained "irrelevant matters and matters to which L.K. had not testified." The State's Attorney then invited an objection by defense counsel and offered to redact those portions of the tape. No objection was interposed by defense counsel.

After both tapes were viewed by the trial court, the State introduced the testimony of Kae Ecklebarger, a Colorado social worker, who testified that L.K. suffers from post-traumatic stress syndrome. This opinion was based upon one interview with L.K., a review of the first videotaped interview, and conversations with Rita and Bernie. No objection to this testimony was made by defense counsel, nor did he object to or cross-examine concerning the qualifications of the witness even though she had only a bachelor's degree in social work and her training with respect to post-traumatic stress syndrome recognition consisted of a one-day seminar and some unspecified training in "The Accommodation Syndrome," which she testified was "part and parcel" of the post-traumatic stress syndrome. The State also elicited hearsay testimony without objection from this witness concerning what others had told her that L.K. had said to them, specifically Rita and Bernie, neither of

whom testified. The State also called L.K.'s pediatrician, who testified concerning conversations with Rita prior to her examination of L.K. Again, no objection was interposed by defense counsel even though the witness testified not about L.K.'s allegations, but rather about what L.K.'s mother had told her. (In fact, L.K. initially denied any abuse during the pediatrician's first examination.)

Although I recognize that claims of ineffective assistance of counsel will fail if counsel's alleged incompetency arises out of a matter of trial tactics or strategy, I can perceive of no rational trial strategy which would dictate a decision not to move to suppress or object to the videotapes, particularly the second tape. The majority of this tape contains highly prejudicial and totally irrelevant material which, in my view, could only serve to severely prejudice the defendant. If indeed defense counsel initially had some tactic or trial strategy in mind, I can find no indication in the record that this tactic or strategy was ever utilized.

Equally inexplicable is the failure of defense counsel to question the qualifications of the State's witness, Kae Ecklebarger, or to object to her opinion respecting syndrome evidence or to question the principles upon which her opinion was based and the extent of her experience with those principles.

With regard to defense counsel's failure to object to the hearsay testimony of the witnesses who testified as to what Rita told them of L.K.'s complaints, it appears clear to me that such testimony is not authorized by section 115—10(a)(2) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 115—10(a)(2)) as the testimony was not a recitation of what L.K. had said, but rather what Rita and Bernie had said. Again I can see no rational trial strategy, only prejudice to the defendant. Even if the statements had been made by L.K., I would have difficulty finding them to possess sufficient safeguards of reliability given the circumstances and timing surrounding the same. See *People v. Zwart* (1992), 151 Ill. 2d 37, 600 N.E.2d 1169.

I fully realize that this case was not a trial by jury and that there is a presumption that a trial judge will consider only relevant, competent testimony. Nevertheless, I believe that defense counsel's errors were so egregious that the State's case was not subjected to meaningful adversarial testing, thereby depriving the defendant of a fair trial under the *Strickland* and *Albanese* standards. I would also note that even the trial judge expressed question and discomfort with defendant's representation. While any one of counsel's errors, standing alone, would arguably constitute ineffective assist-

ance of counsel and be sufficient grounds for reversal, I' have no doubt that the cumulative effect of these errors constituted ineffective assistance of counsel and denied defendant a fair trial. *People v. Bell* (1987), 152 Ill. App. 3d 1007, 505 N.E.2d 365.

Finally, I am unable to agree with the majority that the trial court's "extraneous remarks" that children of L.K.'s age could not make false accusations of sexual abuse or testify against their fathers unless such acts indeed happened were not error. Even given the context in which the remarks were made, these conclusions are at best speculative and without foundation in the evidence. As such, I believe the trial court made impermissible conclusions based upon its personal beliefs. See *People v. Johnson* (1992), 237 Ill. App. 3d 860, 867-68, 605 N.E.2d 98, 104.