NOTICE
Decision filed 11/07/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220078-U

NO. 5-22-0078

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 19-CF-3823 |
| | ) | |
| KEITH HARE, | ) | Honorable |
| | ) | Kyle A. Napp, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Presiding Justice Boie and Justice Barberis concurred in the judgment.

**ORDER**

¶ 1  *Held*: The circuit court did not err in considering the psychological harm to the victim as a factor in aggravation during the defendant's sentencing because psychological harm is not inherent in the offense of predatory criminal sexual assault of a child.

¶ 2  Following a bench trial, the defendant, Keith Hare, was convicted of two counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2018)). He was sentenced to two consecutive 30-year terms in the Illinois Department of Corrections, followed by mandatory supervised release for a period of 3 years to life. The defendant then filed this appeal. On appeal, the defendant contends that the circuit court improperly considered that the defendant's conduct caused or threatened serious harm to the victim

1

where the record does not support a showing of harm beyond what is inherent in the charge of predatory criminal sexual assault.

¶ 3                                      I. BACKGROUND

¶ 4     On November 27, 2019, the defendant was charged by information with three counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2018)). Subsequently, the State amended the information and charged the defendant with two counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2018)) and one count of attempt predatory criminal sexual assault of a child (720 ILCS 5/8-4(a) (West 2018)). Counts I and II of the amended information alleged that on November 16, 2019, the defendant, who was 17 years of age or older, committed acts of sexual penetration on K.S., a child under 13 years of age at the time of the offenses, the sex acts allegedly involved the defendant's penis and the victim's sex organ. Count III alleged that on November 16, 2019, the defendant, who was 17 years of age of older, took a substantial step toward committing the offense of predatory criminal sexual assault of a child in that the defendant attempted to put his penis into the victim's mouth. The defendant proceeded with a bench trial, where the following evidence was presented by the State.

¶ 5     On November 16, 2019, Michael Hosfelt dropped off his six-year-old daughter, K.S., at the home of Bridget Teague. Bridget was a family friend, who sometimes watched K.S. along with her own grandchildren. On this day, Bridget had to take one of her daughters, Rachel Barnes, to work, so Bridget left K.S. at the house with some other family members, including Rashonda Barnes (Bridget's adult daughter), E.B. (Rashonda's one-year-old daughter), and O.T. (Rachel's six-year-old daughter).

¶ 6     While K.S. was at Bridget's house, Rashonda was exchanging text messages with the defendant. Rashonda testified that she and the defendant discussed having a "threesome" with a young person and going to get pizza. Sometime after this conversation, the defendant drove to Bridget's house to pick up Rashonda. Rashonda came out to meet the defendant, and she brought K.S., O.T., and E.B. with her. They all got into the defendant's car. The children sat in the back seat and Rashonda sat in the front seat. Rashonda testified that she thought that they were going to get pizza. Instead, the defendant drove to Rock Springs Park in Alton, Illinois. When they arrived at the park, O.T. and E.B. went to the playground to play. K.S. was told to stay by the bench with the defendant and Rashonda.

¶ 7     Rashonda initially testified[1] that while O.T. and E.B. were playing at the playground, the defendant bent K.S. over the bench and assaulted her by rubbing her vagina with his hand and penis. Upon further questioning by the prosecutor, Rashonda eventually admitted that she also touched K.S.'s vagina. She stated that she did this because the defendant grabbed her hand and put it there. After the initial assault, the defendant got into his car with K.S., and Rashonda went to the playground to check on the other children. After checking on the children, Rashonda walked back to the defendant's car and looked in the rear driver's side window. She saw the defendant on top of K.S., assaulting her for a second time.

---

[1]Rashonda testified in this case as required by the plea agreement she entered for charges related to her actions on November 16, 2019.

3

¶ 8    The State also called O.T., the daughter of Rachel Barnes, as a witness to the occurrence in the park. O.T. recalled that she went to the park with the defendant, Rashonda, K.S., and E.B., and that she and E.B. went to the playground when they arrived. O.T. stated that she was scared of the woods near the playground, so she came back towards the bench. As she approached the bench, O.T. saw the defendant behind K.S. Both the defendant's and K.S.'s pants and underwear were pulled down and the defendant was moving back and forth. It looked like "[the defendant] was attached to her." Rashonda yelled at O.T. to go back to the playground. O.T. went back to the playground for a little while. When O.T. returned to the benches she saw Rashonda "moving" on top of K.S. Rashonda cursed at O.T. and told her to go back to the playground. Once at the playground, O.T. saw the defendant, Rashonda, and K.S. get into the back of the defendant's car. O.T. could not see what happened in the car because the car windows were tinted. Eventually, the defendant, Rashonda, and K.S. got out of the car. K.S. came to the playground to play with O.T. O.T. noticed that K.S. seemed sad and would not talk to O.T.

¶ 9    Shortly after these events, everyone got back in the car and the defendant drove to Taco Bell. Rashonda described K.S. as "acting kind of weird" and "just scared." K.S. did not speak to anyone at Taco Bell except when Rashonda picked K.S. up and told her not to tell anyone about what happened. Once everyone finished eating, they all left and went back to Bridget's house.

¶ 10    When K.S. walked into the house, Bridget noticed that the child looked scared. Bridget and her daughter, Rochella, talked to K.S. to try to figure out what was wrong. K.S.

4

eventually told them about what happened at the park. K.S. said that there was a man touching her "private parts" and "trying to put his private part in."

¶ 11 Rachel returned to Bridget's house after work. Once Rachel arrived, her daughter, O.T., told her what had happened to K.S. at the park. O.T. also mentioned that K.S. was too afraid to say anything. Rachel went to the Alton Police Department that night to report the assault. Rachel spoke with Detective Joseph Splittorff. O.T. also talked to the police that night. Rachel took O.T. to the child advocacy center (CAC) the next day.

¶ 12 Detective Splittorff testified that he was assigned to the investigation. As part of the investigation, Detective Splittorff obtained a copy of the surveillance video from the Taco Bell where K.S. was taken after the assault. The surveillance video was admitted into evidence. The State offered the video to depict the demeanor of K.S. shortly after the assault. The State also presented the CAC interview with K.S. The recorded interview was conducted by Krista Mansholt, a qualified forensic interviewer, on November 22, 2019. During the interview K.S. disclosed that she was at the park with the defendant and Roshanda on November 16, 2019, and that the defendant placed his sex organ on her sex organ twice at the park.

¶ 13 At the close of the State's case, the defendant moved for a directed verdict. The motion was denied, and the defense rested. Following closing arguments, the circuit court issued its ruling from the bench. The circuit court found the defendant not guilty of attempt predatory sexual assault of a child and guilty of the two counts of predatory criminal sexual assault of a child. The circuit court ordered a presentence investigation. The defendant subsequently filed a combined posttrial motion and motion for a new trial. In the motion,

5

the defendant requested that the circuit court vacate the judgment and find the defendant not guilty or alternatively grant the defendant a new trial. The circuit court denied the defendant's posttrial motion.

¶ 14 Before the sentencing hearing, the circuit court discussed the presentence investigation and accepted corrections made by the defendant's attorney. The circuit court then proceeded with the sentencing hearing. The State sought a 30-year sentence on each count, to run consecutively, and argued three factors in aggravation.

¶ 15 First, the State argued that "the defendant's conduct caused or threatened serious harm." The State supported this argument by referencing the surveillance video from Taco Bell that was played during the bench trial that demonstrated how K.S. behaved after the assaults at the park. The State described K.S. as a "shell-shocked six-year-old girl." The State compared how K.S. appeared to be traumatized in the Taco Bell video, to the CAC interview, and to her demeanor during her testimony. Second, the State argued that the circuit court should consider the defendant's prior delinquency and criminal activity. The State commented on the defendant's long history of sexually abusing children, noting that he has become bolder and therefore more dangerous. Third, the State asked that the circuit court consider a sentence that would serve to deter others from committing the same crime.

¶ 16 The defendant's attorney then argued factors in mitigation. Counsel argued that the defendant had medical issues that would be difficult to address while incarcerated. Counsel also noted that the defendant would suffer a financial impact from his incarceration.

¶ 17 After considering the arguments of counsel, the circuit court found the three factors in aggravation argued by the State applied in the defendant's case, but none of the factors

in mitigation applied. The circuit court stated that the defendant was "a predator in every sense of the word, and that [K.S.] will never be the same because of what [he] did to her." The circuit court found that the defendant had "taken advantage of children [his] whole life." The circuit court noted that although the State had presented two other witnesses who testified they had been assaulted by the defendant, the court was imposing a sentence based solely on what the defendant did to K.S. The circuit court sentenced the defendant to 30 years for both counts of predatory sexual assault of a child to run consecutively for a total of 60 years. This appeal followed.

¶ 18                                II. ANALYSIS

¶ 19    The defendant argues that the circuit court erred in improperly considering psychological harm of the victim as a factor in aggravation when imposing his sentence. The defendant claims that absent a showing that the defendant's conduct caused more harm to K.S. than the statute already contemplated, it was improper for the trial court to aggravate the defendant's sentence on the basis that his conduct caused or threatened serious harm. The defendant acknowledges he did not raise this objection during sentencing or in a postsentencing motion, and he requests that this court review his claim for plain error. The defendant argues that his sentence should be vacated, and the case should be remanded for a new sentencing hearing. In response, the State argues that the defendant forfeited the claim, and that he has not established that he is entitled to plain error review.

¶ 20    "It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and written postsentencing motion raising the issue are required." *People v. Hillier*, 237 Ill. 2d 539, 544 (2010) (citing *People v. Bannister*, 232

7

Ill. 2d 52, 76 (2008)). As noted, the defendant did not raise this objection during sentencing or in a postsentencing motion, and he has conceded the forfeiture. Nevertheless, the defendant requested that we review this claim for plain error.

¶ 21    The plain error doctrine is a two-prong test, in which the defendant carries the burden of persuasion for both prongs. *Hillier*, 237 Ill. 2d at 545. First, a defendant must show that a clear and obvious error has occurred. *Hillier*, 237 Ill. 2d at 545. Second, if the defendant is claiming that an error occurred during sentencing, the defendant must show either that "(1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Hillier*, 237 Ill. 2d at 545. If the defendant fails to satisfy either prong, the claim will fail. *Hillier*, 237 Ill. 2d at 545.

¶ 22    There is a "general rule that a factor inherent in the offense for which a defendant has been convicted cannot also be used as an aggravating factor in determining his sentence." *People v. Bunning*, 2018 IL App (5th) 150114, ¶ 15 (citing *People v. Phelps*, 211 Ill. 2d 1, 11 (2004)). This general rule assumes that the General Assembly has already considered the factors inherent in the offense when determining the sentencing range. *Bunning*, 2018 IL App (5th) 150114, ¶ 15. When determining if a circuit court based the defendant's sentence on proper aggravating and mitigating factors, the reviewing court "should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009). There is a strong presumption that the trial court used proper legal reasoning in its sentencing determination. *Dowding*, 388 Ill. App. 3d at 942-43.

¶ 23    "Harm is not inherent in the offense" of predatory criminal sexual assault of a child. *People v. Kerwin*, 241 Ill. App. 3d 632, 636 (1993); 720 ILCS 5/11-1.40 (West 2018). Also, the circuit court may consider psychological trauma as an aggravating factor without direct evidence of trauma. *People v. Reber*, 2019 IL App (5th) 150439, ¶ 94 (citing *People v. Burton*, 102 Ill. App. 3d 148 (1981)).

¶ 24    The defendant relies on *People v. Calva* for his argument that our courts have held that "it can be inferred that a child who is the victim of sexual assault has sustained psychological damage." *People v. Calva*, 256 Ill. App. 3d 865, 875 (1st Dist. 1993). In *Calva*, the defendant pled guilty to six counts of aggravated criminal sexual assault. *Calva*, 256 Ill. App. 3d at 867. During the sentencing hearing, evidence in aggravation and mitigation was presented. As to the factors in aggravation, the State presented evidence that a lengthy prison term was necessary to deter others from committing similar crimes and the defendant was in a position of trust to the victim. Despite no evidence of psychological harm caused to the victim being presented by the State, the circuit court stated that the defendant "had physically and psychologically injured and scarred [the victim] for life." *Calva*, 256 Ill. App. 3d at 869. The circuit court then proceeded to sentence the defendant to an extended sentence. *Calva*, 256 Ill. App. 3d at 869. On appeal, the court found that since "no evidence was presented that [the victim] suffered any psychological harm beyond the harm implicit in any sexual assault against a child," psychological harm could not be considered a factor in aggravation. *Calva*, 256 Ill. App. 3d at 877.

¶ 25    The reasoning in *Calva* has been distinguished by this court in *People v. Bunning*, 2018 IL App (5th) 150114. The *Calva* decision has also been distinguished or questioned in many other unreported cases. See *People v. Muraida*, 2021 IL App (4th) 180650-U, ¶¶ 58-59 (and cases cited therein). After reviewing the record, we find that *Calva* is distinguishable from the case at bar. Unlike *Calva*, this case proceeded with a bench trial where the circuit court was able to observe K.S. and assess her demeanor on three separate occasions. The circuit court watched K.S. in a surveillance video from Taco Bell immediately after the assaults occurred, in the CAC interview, and at trial when K.S. testified. In addition, the circuit court was presented with testimony from K.S.'s father that K.S. received counseling for six months following the assaults. Finally, the circuit court heard from several witnesses who described K.S.'s demeanor after the assaults as either sad, scared, confused, or "emotionally and traumatically upset."

¶ 26    On this record, there is sufficient evidence from which to find or reasonably infer that K.S. suffered psychological harm as a result of the sexual assault. Therefore, we find that the circuit court's consideration of psychological harm to the victim was not erroneous. Without error, the defendant cannot establish plain error. Accordingly, the defendant's forfeiture must be honored.

¶ 27                                III. CONCLUSION

¶ 28    For the foregoing reasons, we affirm the judgment of the circuit court of Madison County.

¶ 29    Affirmed.