NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230812-U

NO. 4-23-0812

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 21, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Logan County |
| MATTHEW W. SCOTT, | ) | No. 21CF262 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jonathan C. Wright, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Justices Harris and Zenoff concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The appellate court affirmed in part and reversed in part, finding (1) the evidence was sufficient for the jury to convict defendant on two counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40 (West 2018)), (2) defendant's two convictions violated the one-act, one-crime rule, requiring his conviction on count I be vacated, (3) the jury instructions on count II did not require the reversal of defendant's conviction, (4) the trial court's admission of certain out of court statements did not require reversal, (5) the State's remarks in its rebuttal argument did not cause prejudice, (6) any errors were not sufficient to require reversal of both counts, even cumulatively, and (7) the court properly considered psychological harm as an aggravating factor at sentencing.

¶ 2     A jury found defendant, Matthew W. Scott, guilty of two counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40 (West 2018)), and the trial court sentenced him to 25 years' incarceration. Defendant appeals, arguing (1) the evidence was insufficient to convict him, (2) his two convictions violate the one-act, one-crime rule, (3) the jury received improper instructions, (4) his attorney failed to challenge certain out of court statements, (5) the

State made improper inflammatory statements during its rebuttal argument, (6) the cumulative effect of multiple errors denied him a fair trial, and (7) the court considered an improper aggravating factor at sentencing.

¶ 3    For the reasons that follow, we vacate defendant's conviction and sentence for count I, but we affirm defendant's conviction and sentence for count II.

¶ 4                    I. BACKGROUND

¶ 5    In December 2021, the State charged defendant with two counts of predatory criminal sexual assault of a child. The information alleged defendant committed both counts "on or about June through September 2019, in Logan County, Illinois." Count I alleged defendant "committed an act of sexual penetration with H.W., who was under 13 years of age, in that the defendant touched H.W.'s vagina with his hand." Count II alleged defendant "committed an act of sexual contact with H.W., who was under 13 years of age, in that the defendant touched H.W.'s vagina with his hand for purposes of sexual arousal."

¶ 6    Before trial, the trial court held a hearing on the State's notice of intent to offer out of court statements. The State's first witness, Bryanna Stevens, testified that she worked at the Sangamon County Child Advocacy Center (CAC) conducting forensic interviews with children regarding allegations of sexual assault. She interviewed H.W. and her sister, A.W., on September 16, 2021. H.W. was nine years old at the time of the interview. Detective Christopher Reed of the Lincoln Police Department observed the interview from another room, and the interview was recorded. The State's second witness, Elayne, H.W.'s mother, testified that when defendant's name was brought up in conversation, H.W. told her to stop talking about him because he touched her and she pointed "to her lower parts." The State's final witness, Monica Mayer, testified that she was Elayne's neighbor. She was present at the time of H.W.'s statement, and she confirmed

- 2 -

Elayne's account. The court ruled that both H.W.'s interview with Stevens and her statement to Elayne were admissible out of court statements, although it acknowledged H.W. still needed to testify.

¶ 7        Defendant's jury trial began in May 2023. On the first day, the State amended count II of the information to replace the phrase "sexual contact" with "sexual conduct." Defense counsel did not object.

¶ 8        The State's first witness was Detective Reed. He testified that, in September 2021, he received a report from another officer and the Illinois Department of Children and Family Services (DCFS) of an alleged sexual assault of a juvenile. He set up an interview between the alleged victim, H.W., and CAC. He observed the interview from another room but did not participate. In the interview, H.W., who was nine years old at the time, told Stevens defendant touched her inappropriately.

¶ 9        Detective Reed testified that he called defendant and told defendant he needed to interview defendant about an incident that occurred when defendant was babysitting. On September 30, 2021, defendant came to the police station for an interview. A DCFS investigator was also present. Defendant reported he and Elayne briefly dated in summer 2019, and he babysat her children during that time. According to Detective Reed, defendant said, at bedtime, the kids showered and got ready for bed on their own. Detective Reed asked if defendant helped them shower, and he said he did not have to do anything besides turn the water on for them, and Elayne laid out clothes for the kids. Detective Reed claimed defendant denied helping the children dry themselves off. When Detective Reed asked defendant why H.W. would say that he helped the kids dry off, he said that he would lay out clothes for the kids, contradicting his earlier statement. Defendant denied touching H.W.

¶ 10    Detective Reed testified that he asked defendant what should happen to someone who touches children. Defense counsel objected based on relevance. The trial court responded it did not yet know how defendant had answered but it could be a statement against interest, so the court overruled the objection. According to Detective Reed, defendant said when people touch children, " '[I]f they did it once, they should be told not to do it again. If they did it more than once or thought about it all the time, they should receive counseling.' " Detective Reed further testified that he told defendant he did not think a six- or seven-year-old would take showers on her own without help and defendant replied he only put clothes out on the sink. Detective Reed testified that the interview was not recorded because "the cameras were down." On cross-examination, Detective Reed acknowledged, because there was no recording, the only record of the interview was his report and his memory. He did not know the camera failed to record until after the interview. Detective Reed confirmed that through the entire interview, defendant denied helping any child shower or dry off or touching H.W.

¶ 11    H.W. testified next. She was 11 years old at the time of the trial. She told the jury defendant used to babysit her, would wait near the sink when she got out of the shower, and would "touch" her. H.W. testified that defendant used his hands, and when the prosecutor asked where he put his hands, she answered, "[l]ower part," "[b]etween the legs," and, "[t]he front." H.W. testified this made her feel uncomfortable and happened more than once. She said defendant did not say anything when he did this, and she could not tell if he was looking at her. The prosecutor asked H.W., "[W]hat part would he touch on your—in between your legs?" H.W. answered, "Private part," which she uses for the "[b]athroom." H.W. testified defendant touched her in the bathroom, and A.W. would be "in the room."

¶ 12    The prosecutor asked, "[A]fter getting out of the shower, would his hands—his hands would go in your private parts, you said?" H.W testified, "Uh-huh, yes." The prosecutor asked, "When they would go in your private parts, how did that make you feel?" H.W. responded it was "[r]eally uncomfortable," and she did not remember if it hurt. She testified defendant's fingers moved when he touched her. She was seven years old when defendant touched her, and no one else ever touched her.

¶ 13    H.W. further testified something happened downstairs in the living room. She told the jury defendant "unzipped" and "rezipped" her shorts. When this happened downstairs, defendant told A.W. to go upstairs. H.W. testified defendant would take off her shorts then put them back on. H.W. had underwear on, and defendant would not take her underwear off. She testified defendant did not "go in [her] underwear" while they were downstairs.

¶ 14    On cross-examination, H.W. acknowledged sometimes defendant's mother, Lisa Allen, would babysit her, and sometimes defendant would babysit her. She testified she first told Elayne about defendant's conduct not long before her interview with Stevens, and she denied telling Elayne anything before that time. Then, she acknowledged she told Brent Wallace, who had lived at defendant' and Allen's house with them, once before.

¶ 15    When defense counsel cross-examined H.W. about how precisely defendant touched her, they had the following exchange:

"Q. Now, you said that when you were in the bathroom that he would touch between your legs. Would that go inside of you or just on the outside?

A. I can't remember, so I don't know.

Q. Okay.

A. Wait, yes.

Q. I'm sorry?

A. Yes.

Q. Yes what? Yes, you can't remember?

A. (Nodding head.)"

H.W. testified this would happen as soon as she exited the shower and the towel was on the toilet seat. H.W. admitted defendant never tried to make her touch him and she did not notice anything different about his body when he touched her. She testified defendant's hands would move when he touched her and the touching lasted five or six seconds. Most of the time, she did not do anything, but the last time she said, "Stop." She confirmed defendant did not touch her in the living room. She did not remember telling Stevens that it hurt like she was giving birth to a child.

¶ 16        Mayer testified that on September 11, 2021, she was sitting on a patio with Elayne, H.W., and some friends. They were reminiscing, someone brought up defendant, and H.W. became scared and worried. Mayer testified H.W. said something and pointed to "[h]er vagina area." Mayer said she had never seen H.W. act this way before.

¶ 17        Elayne testified she was the mother of H.W. and A.W. She moved to Logan County in May 2018, and she met defendant and his mother, Lisa Allen, soon after. She and her family lived with defendant and his family until June 2019. During this time, Allen watched the children while Elayne worked. When she first moved there in 2018, she and defendant "had a relationship" for about a month and a half. When she moved out in June 2019, defendant began babysitting more. At the time, H.W. was seven years old. Elayne testified she saw H.W.'s behavior change during the period when defendant watched her. She became more private, and she did not want to take showers. She did not dress in front of Elayne. Eventually, defendant and Allen stopped

babysitting because their schedule was too complicated and H.W. was uncomfortable, but Elayne maintained an "amicable" relationship with defendant.

¶ 18          Elayne testified that on September 11, 2021, she was telling stories with some friends, including Mayer. Defendant's name came up, and H.W. told her to stop talking about him. H.W. became angry and quiet. Elayne asked why H.W. wanted her to stop talking about defendant, and H.W. said, " 'Because he touched me.' " She then pointed to her "privates." Elayne asked, " 'What do you mean?' " and H.W. repeated, " 'He touched me.' " She "pointed to her private parts" again. Elayne called 911 soon after. She testified she did not tell H.W. what to say in her CAC interview.

¶ 19          On cross-examination, Elayne testified H.W. showered on her own, but she needed help turning on the water to make sure it was not too hot or cold. When defendant was watching H.W., she was more withdrawn and did not want to do things she used to do, and Elayne started taking her to a counselor.

¶ 20          On redirect examination, the prosecutor asked Elayne why she was not more concerned earlier. Elayne answered, "Because [defendant] has a son, and I know that when kids get out of the shower, they don't completely dry off." She testified, "You have to help dry them off sometimes; and I just figured, okay, that's just normal parent stuff that you are going to help make sure the kid is dry before they put clothes on." She first believed "something happened" to H.W. only after her comment on September 11, 2021.

¶ 21          The video of H.W.'s interview with CAC was admitted into evidence and played for the jury. The video shows Bryanna Stevens interviewing H.W., who tells Stevens her babysitter used to touch her. She tells Stevens he did this "every single day after she took a shower, or [she] wore jeans." She says he touched her when she did not want him to touch her, in her "private spot."

She tells Stevens that when she got out of the shower, defendant was sitting on the toilet seat, waiting. He touched her with his finger, and she tried to get away, but he did not let her go. Stevens asks H.W. what she uses her "private spot" for, and H.W. answers, "use the bathroom," and "pee-pee." Stevens asks, "Would that be on the inside, the outside, or somewhere else on the private spot?" H.W. responds, "Inside." She tells Stevens it felt like she was "giving birth to a child." H.W. says defendant did not say anything and he walked out of the bathroom afterwards. She also says defendant told her not to tell Elayne, and he would hurt her every day if she did.

¶ 22    In the video, H.W. tells Stevens about defendant's behavior in the living room and the kitchen. She says defendant unzipped her pants and zipped them back up. She says her clothes were on, and defendant would pull down her pants and do the same thing that he did in the bathroom. She tells Stevens defendant used one hand, and his other hand was resting on the couch. She told defendant to stop, but he would not. She had underwear on, but defendant pulled those down also. She says the same thing that happened in the living room and bathroom happened in the kitchen. H.W. says that when defendant touched her, he wore a gray shirt and long black pants, and his clothes were always on. H.W. denied A.W. ever saw defendant touch her. H.W. says she told the adults once at a restaurant, and then later, she told Elayne again. When she told them at the restaurant, Elayne looked at Wallace, and they left the restaurant.

¶ 23    Stevens testified that she worked as a forensic interviewer with CAC. She interviewed H.W. on September 16, 2021. H.W. was nine years old at the time of the interview. She confirmed the recording of the interview was accurate. On cross-examination, defense counsel asked whether H.W.'s statement that the touching felt like giving birth to a child was age appropriate. Stevens answered, "I don't know about age appropriate," and she had never heard another child H.W.'s age say that. The State rested.

¶ 24        The defense's only witness was Lisa Allen, defendant's mother. She testified Elayne, H.W., and A.W. had lived with her. During this time, Elayne worked and Allen watched the children. She would make sure they ate, walk them to school, and make sure they showered. Regarding the shower, Allen testified, "I would go in, make sure the water was not too hot, told them to check the temperature first to make sure, and they would hop in, you know, take their showers, wrap up in a towel, go to the bedroom, and put their PJs on." Allen testified the children were able to perform these tasks on their own. She said Elayne had instructed her on how to handle bath time. Allen testified that, after Elayne moved out, she and defendant both still helped with babysitting. Allen was sometimes present at the same time as defendant, and she observed bath time. She testified defendant got the water ready, just like she did, and followed the same routine they had before. She testified when the girls showered, she and defendant stayed downstairs in the living room. On cross-examination, she acknowledged defendant sometimes watched the girls without her present. The defense rested.

¶ 25        The State called Detective Reed back to the stand. He testified he spoke to Allen on the phone on February 25, 2022, and she told him she only watched the girls a few times after Elayne and the children moved out and defendant mostly watched them.

¶ 26        After the close of evidence, the trial court held a conference on jury instructions. One of the State's proposed jury instructions for count I stated, "A victim's finger can be an 'object' within the statutory definition of sexual penetration," and it cited *People v. Scott*, 271 Ill. App. 3d 307, 313 (1994). Defense counsel told the court this was not an Illinois Pattern Jury Instruction, and it was unnecessary. The State responded it needed to clarify the definition of "object." The court refused the instruction, stating that the State could argue a finger was an "object," but the instruction was not necessary.

¶ 27 In its closing argument, the State told the jury there was no dispute defendant was over 17 years old and H.W. was under 13 years old. For count I, the State had to prove defendant committed "sexual penetration," defined as "any contact, however slight, between the sex organ or anus of one person and an object, sex organ, or mouth of another." For count II, the State had to prove defendant "knowingly committed an act of contact, however slight, between the sex organ of one person and the part of the body of another for purpose of sexual gratification or arousal." The State defined "sexual conduct" as "any intentional or knowing touching or fondling by the accused, either directly or through the clothing of the sex organ of the victim, for the purpose of sexual gratification or arousal of the victim or the accused." The State argued H.W. identified defendant as her abuser. She consistently reported defendant touched her. In contrast, during defendant's interview with Detective Reed, he inconsistently described the shower routine. To show sexual arousal, the State emphasized defendant had no reason to touch a small child.

¶ 28 Defense counsel argued the case presented a question of credibility because H.W. accused defendant, but defendant, "in his interview[,] denied it adamantly." She argued H.W. was not credible. For example, she did not know what giving birth to a child is like, and she made contradictory claims regarding whether the touching hurt. Defense counsel questioned the reliability of Detective Reed's recollection of the interview with defendant because it was not recorded. Regarding sexual gratification, defense counsel suggested any touching could have resulted from defendant drying H.W. with a towel, which would not be for sexual gratification. Defense counsel told the jury, "Now, as far as the first count of sexual penetration, that is contact, however slight. This, again, goes to, was there contact, I guess? That's the question here."

¶ 29 In rebuttal, the State told the jury:

"The only things that you need to deliberate and think about is whether or not the defendant sexually penetrated [H.W.] or whether he committed an act of sexual conduct with [H.W.]; and when we get to the sexual conduct, that's the only count that you need to consider, whether or not it was for the purpose of sexual gratification or arousal. Count 1 you don't need to consider that. It's just whether or not he touched her vagina with his finger. That's it. That's the only thing you need to deliberate about, Did he touch her with his finger? Yes. You have overwhelming evidence of that."

The State also said, "In the CAC interview she described the defendant wearing a gray T-shirt and long black pants. That is the same outfit the defendant wore to court on Monday, perhaps hoping to terrorize her one more time."

¶ 30       After the attorneys' arguments, the trial court instructed the jury. It defined "sexual conduct" and "sexual penetration" just as the State had during closing argument.

¶ 31       Regarding count II, the trial court instructed the jury as follows:

"A person commits the offense of predatory criminal sexual assault of a child, sexual conduct, when he is 17 years of age or older and knowingly commits an act of sexual contact, however slight, between the sex organ or anus of one person and the part of the body of another for the sexual gratification or arousal of the defendant, and the victim is under 13 years of age.

To sustain the charge of predatory criminal sexual assault of a child, sexual conduct, the State must prove the following propositions: First proposition, that the defendant knowingly committed an act of contact, however slight, between the sex organ of one person and the part of the body of another for the purpose of sexual

gratification or arousal of the defendant; and second proposition, that the defendant was 17 years of age or older when the act was committed; and third proposition, that [H.W.] was under 13 years of age when the act was committed."

¶ 32 The jury found defendant guilty of both counts. Defendant moved for a new trial, claiming the evidence was insufficient for the convictions. The trial court denied the motion. At the sentencing hearing, Elayne gave a victim impact statement, telling defendant H.W. "wonders what she did for you to do such horrible things to her. She doesn't leave her room much. She doesn't eat much." She told him about H.W.

"being up all night not being able to sleep knowing that she may have another nightmare, the depression, the anxiety; having to hide all the knives so she wouldn't hurt herself just to make that nightmare stop. Me having to call for help late at night because she won't stop banging her head against the wall to make the thoughts of you stop."

¶ 33 A victim services coordinator read a statement from H.W. She said:

"I have nightmares now, and I don't like to sleep. I don't like to be outside or be alone with people. I hate showers, even though he's not there. It brings back the thoughts. When my mom has to help me in the shower, I stay half dressed. I see a counselor to help with my anger, but I'm not ready to talk about everything yet. It's scary. It's hard for me to trust people."

¶ 34 The State recommended a total of 28 years' imprisonment. In aggravation, the State argued defendant's conduct caused serious harm, emphasizing the impact statements, among other aggravating factors. Defense counsel asked for the minimum sentence of six years and argued for various mitigating factors.

¶ 35        The trial court reviewed the mitigating and aggravating factors. Regarding the harm to H.W., the court stated:

> "Her mother has testified that it has changed her demeanor, how she interacts with people, how she takes care of her personal hygiene, and we hope that there will be a point in time where she will overcome that, but there is no guarantee anybody ever overcomes that, and I'm certainly not an expert to say whether that will occur or not. So that is certainly a factor in aggravation, and that is the harm that has been inflicted upon [H.W.]"

¶ 36        The trial court sentenced defendant to 12 years and 6 months' imprisonment for each count, with the sentences to run consecutively. Defendant moved to reconsider, and the court denied the motion.

¶ 37        This appeal followed.

¶ 38                                    II. ANALYSIS

¶ 39        On appeal, defendant argues (1) the evidence was insufficient to convict him of either count, (2) his conviction for both counts violated the one-act, one-crime rule, (3) the State and trial court improperly instructed the jury, (4) his trial attorney's failure to challenge certain out of court statements constituted ineffective assistance of counsel, (5) the State made improper and inflammatory remarks in its rebuttal that denied him a fair trial, (6) cumulative errors denied him a fair trial, and (7) the court improperly relied on harm to the victim as an aggravating factor at sentencing.

¶ 40                            A. Sufficiency of the Evidence

¶ 41        We begin with defendant's challenge to the sufficiency of the evidence. Due process of law "protects the accused against conviction except upon proof beyond a reasonable

doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970); see U.S. Const., amends. V, XIV; see also Ill. Const. 1970, art. I, § 2. Illinois does not define "reasonable doubt" because the term is self-defining. *People v. Downs*, 2015 IL 117934, ¶ 19. The State bears the burden of proof, and that burden "never shifts to the accused." *People v. Howery*, 178 Ill. 2d 1, 32 (1997).

¶ 42    When a defendant argues the evidence at trial was insufficient, "a reviewing court, considering all of the evidence in the light most favorable to the prosecution, must determine whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime." *People v. Brown*, 2013 IL 114196, ¶ 48. "[A] reviewing court will not substitute its judgment for that of the trier of fact on issues involving the weight of the evidence or the credibility of the witnesses." *Id.* Instead, "[u]nder this standard of review, it is the responsibility of the trier of fact to 'fairly *** resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *Howery*, 178 Ill. 2d at 38 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "[T]he fact-finder is charged with deciding 'how flaws in part of the testimony affect the credibility of the whole.' " *People v. Gray*, 2017 IL 120958, ¶ 47 (quoting *People v. Cunningham*, 212 Ill. 2d 274, 283 (2004)). "Minor discrepancies in testimony affect only its weight and will not render it unworthy of belief." *Id.*

¶ 43    The jury found defendant guilty of two counts of predatory criminal assault of a child. Section 11-1.40 of the Criminal Code of 2012 (Code) states:

> "A person commits predatory criminal sexual assault of a child if that
> person is 17 years of age or older, and commits an act of contact, however slight,
> between the sex organ or anus of one person and the part of the body of another for
> the purpose of sexual gratification or arousal of the victim or the accused, or an act

of sexual penetration, and: (1) the victim is under 13 years of age." 720 ILCS 5/11-1.40 (West 2018).

There is no dispute defendant was over 17 years of age and H.W. was under 13 years of age. Defendant contends, however, the State did not prove that he committed an "act of sexual penetration," as alleged in count I, or that he committed any "act of contact" with another person's sex organ "for the purpose of sexual gratification or arousal," as alleged in count II.

¶ 44        Beginning with count I, the Code defines "sexual penetration" as:

"[A]ny contact, however slight, between the sex organ or anus of one person and an object or the sex organ, mouth, or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person." *Id.* § 11-0.1.

In *People v. Maggette*, 195 Ill. 2d 336, 348 (2001), the supreme court determined, in this context, the word "object" does not include body parts, such as a hand or finger. Therefore, to prove defendant violated this provision using his finger, the State needed to show not only "contact" between defendant's finger and H.W.'s vulva, but also some "intrusion, however slight."

¶ 45        Defendant contends the State did not prove "intrusion." The State introduced no physical evidence, and it relied exclusively on H.W.'s statements to establish the details of the offense. H.W. spoke of events occurring in the bathroom and the living room. Regarding the events in the living room, she testified only that defendant unzipped her shorts and zipped them again, and her underwear remained on. She did not testify to any contact with her vulva in the living room. In her CAC interview, H.W. said defendant did the same thing in the living room he did in the bathroom, but defendant argues this does not prove intrusion.

¶ 46          Defendant argues H.W.'s statements also did not establish "intrusion" in the bathroom. In her CAC interview, H.W. said defendant touched her "private spot," which she uses for "pee-pee." Although she said this was "inside," defendant claims this refers to how she used her "private spot" to use the bathroom, rather than where defendant touched her. At trial, H.W. testified defendant touched her "lower part." She used the phrases, "[b]etween the legs," "[t]he front," and "[p]rivate part." When the State asked whether defendant's hand went "in" her "private parts," she answered, "yes," but defendant contends this answer to the State's question is not clear enough to prove intrusion beyond a reasonable doubt. Defendant further claims when defense counsel asked H.W. if defendant's touch went inside H.W., she said she did not remember.

¶ 47          We find the evidence was sufficient for a rational trier of fact to conclude, beyond a reasonable doubt, defendant committed an act of sexual penetration. In the CAC interview, H.W. said defendant touched her "inside." Even if, as defendant contends, this statement only indicated where H.W.'s "private spot" was, this still clarified where defendant touched her. Moreover, H.W. told the Stevens the touch felt like "giving birth." The jury could have inferred from this statement that defendant's finger entered then exited H.W.'s vagina. At trial, the State asked H.W., "[A]fter getting out of the shower, would his hands—his hands would go in your private parts, you said?" She clearly testified, "Uh-huh, yes."

¶ 48          Defendant claims H.W. later testified she did not remember if H.W.'s touch went "inside" her, but the transcript of her testimony could easily be understood to confirm intrusion. On cross-examination, the following exchange occurred between defense counsel and H.W.:

"Q. Okay. Now, you said that when you were in the bathroom that he would touch between your legs. Would that go inside of you or just on the outside?

A. I can't remember, so I don't know.

Q. Okay.

A. Wait, yes.

Q. I'm sorry?

A. Yes.

Q. Yes what? Yes, you can't remember?

A. (Nodding head.)"

Here, H.W. appears to vacillate between confirming defendant's finger went "inside" her and saying she did not remember. Particularly considering H.W., an 11-year-old girl, was answering questions in court on cross-examination from defendant's attorney, the jury could reasonably have understood this ambiguous exchange in light of H.W.'s previous, clear statement that defendant's hand went "in" her "private parts" and her unambiguous use of the word "inside" in the CAC interview.

¶ 49　　　Moreover, hardly any evidence at all challenged H.W.'s account. Although Elayne testified, her testimony did not directly contradict H.W.'s claims. The only evidence that remotely challenged H.W.'s allegations was Detective Reed's summary of his interview with defendant where defendant denied any inappropriate touching at all. On review, we view the evidence in the light most favorable to the State (*Brown*, 2013 IL 114196, ¶ 48), and we leave to the factfinder the responsibility to " 'fairly *** resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *Howery*, 178 Ill. 2d at 38 (quoting *Jackson*, 443 U.S. at 319). In this context, we find the evidence was sufficient for a rational jury to find defendant guilty of count I beyond a reasonable doubt.

¶ 50　　　Defendant compares this case to *People v. James*, 331 Ill. App. 3d 1064, 1068 (2002), and *Maggette*, 195 Ill. 2d at 352. First, we note that *James* is inapplicable. *James* did not

involve any direct challenge to the sufficiency of the evidence. Instead, the appellate court reversed for plain error. Moreover, in remanding the case, the appellate court specifically found, "[T]he record contains sufficient evidence for the jury to have found defendant guilty beyond a reasonable doubt." *James*, 331 Ill. App. 3d at 1070. Indeed, as far as sufficiency of the evidence, *James* provides more support for the State than the defense.

¶ 51      In *Maggette*, the victim testified she felt the defendant's fingers "underneath [her] panties and *in* [her] vagina area and through it just right through it and his fingers going underneath it." (Emphasis in original). *Maggette*, 195 Ill. 2d at 352. The supreme court found this statement alone was insufficient to prove intrusion. *Id.* We find *Maggette* distinguishable. Here, H.W. did not use the phrase "vagina *area*." (Emphasis added). Instead, she told Stevens in her CAC interview defendant's touch went "inside" her "private spot" and it felt like "giving birth." When she testified, she confirmed defendant's touch went "in" her "private parts." These statements, viewed in the light most favorable to the prosecution, provide a sufficient basis for the jury to find "intrusion."

¶ 52      Moving to count II, defendant denies the State proved he committed an "act of contact" with H.W.'s vulva "for the purpose of sexual gratification or arousal." 720 ILCS 5/11-1.40 (West 2018). Sexual assault based on "contact" does not require "intrusion," but "contact" must be "skin-to-skin" to violate this provision. *People v. Currie*, 2023 IL App (2d) 220114, ¶ 42.

¶ 53      Defendant specifically challenges the sufficiency of the evidence showing any contact was "for the purposes of sexual gratification or arousal." Defendant claims the State presented no evidence he acted for the purposes of sexual gratification or arousal, such as evidence defendant said anything to H.W., tried to make her touch him, or had an erection. H.W. testified

the touching lasted five or six seconds and sometimes her sister was "in the room." Defendant argues the circumstances of the allegations do not support an inference of sexual gratification or arousal. Although the State argued at trial that the act of contact was itself evidence of the purpose of sexual gratification, defendant claims he was acting as a babysitter and was simply in the bathroom helping H.W. dry off after a shower.

¶ 54    We find the evidence sufficient to sustain the conviction. First, we agree with the State that the act of touching itself establishes defendant acted for the purposes of sexual arousal or gratification. See *People v. Burton*, 399 Ill. App. 3d 809, 813 (2010) ("A defendant's intent to arouse or gratify himself sexually can be inferred solely from the nature of the act."); see also *In re M.H.*, 2019 IL App (3d) 180625, ¶ 16 ("When the accused is an adult, a trier of fact can infer that the accused acted for the purpose of sexual gratification or arousal."). A babysitter has no legitimate purpose for putting his finger "inside" a seven-year-old girl's vulva for five or six seconds as she exits the shower.

¶ 55    Furthermore, "intent of sexual gratification may be proven with circumstantial evidence." *In re Matthew K.*, 355 Ill. App. 3d 652, 656 (2005). Here, H.W. said the towel was on the toilet seat when she exited the shower, indicating defendant was not drying H.W. with the towel. Moreover, H.W. described the touching as "uncomfortable" and said it felt like "giving birth," and she told defendant to stop. She testified no one else had ever touched her before. The touching caused H.W. such distress that she became reclusive and stopped wanting to shower. She later became visibly upset at the mere mention of defendant's name. Considering the nature of the allegations, a reasonable jury could infer from H.W.'s response that defendant's touching was not merely drying her off but was sexual in nature. Therefore, we reject defendant's challenge to the sufficiency of the evidence.

¶ 56                              B. One-Act, One-Crime Rule

¶ 57        Defendant next claims his conviction and sentences on both count I and count II

violate the one-act, one-crime rule. This rule provides "that a criminal defendant may not be

convicted of multiple offenses when those offenses are all based on precisely the same physical

act." *People v. Coats*, 2018 IL 121926, ¶ 11 (citing *People v. King*, 66 Ill. 2d 551, 566 (1977)). An

"act" is "any overt or outward manifestation which will support a different offense." *King*, 66 Ill.

2d at 566. Application of this rule is a question of law, which we review *de novo*. *Coats*, 2018 IL

121926, ¶ 12.

¶ 58        Defendant forfeited this argument by failing to properly raise this issue before the

trial court. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). He asks us to review this issue under

the plain error doctrine. Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967) provides, "Any

error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.

Plain errors or defects affecting substantial rights may be noticed although they were not brought

to the attention of the trial court." Pursuant to this rule, the plain error doctrine provides relief for

an unpreserved error where:

> "(1) a clear or obvious error occurs and the evidence is so closely balanced that the
>
> error alone threatened to tip the scales of justice against the defendant, regardless
>
> of the seriousness of the error, or (2) a clear or obvious error occurs and that error
>
> is so serious that it affected the fairness of the defendant's trial and challenged the
>
> integrity of the judicial process, regardless of the closeness of the evidence." *People*
>
> *v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

Violations of the one-act, one-crime rule are reviewable under the second prong of the plain error

doctrine. *People v. Smith*, 2019 IL 123901, ¶ 14.

¶ 59 Defendant claims the State did not specify distinct physical acts to provide a separate basis for count I and count II. Although evidence of multiple instances of illegal touching was introduced at trial, the State did not, either in the information or at trial, indicate which specific act provided the basis for count I and which provided the basis for count II. Instead, defendant claims, the State provided two separate legal theories to describe the same physical act. Defendant contends that, to support multiple convictions, the State must indicate its intention to prove multiple acts in the charging instrument and it must apportion the crimes among separate actions. See *People v. Crespo*, 203 Ill. 2d 335, 343-45 (2001). Because the State failed to do so here, defendant asks us to vacate one of his convictions.

¶ 60 The State compares this case to *People v. Foster*, 2022 IL App (2d) 210556-U. There, the State charged the defendant, in part, with two identical counts of aggravated criminal sexual abuse. *Id.* ¶ 109. After his conviction on both counts, the defendant argued on appeal that one of the convictions should be vacated because the State failed to distinguish the counts. *Id.* The appellate court disagreed, finding the evidence and the State's closing argument sufficiently distinguished the different counts. *Id.* ¶¶ 112-14. The State claims the same reasoning applies here.

¶ 61 Defendant disagrees. He notes that the two relevant counts in *Foster* were completely identical, but here, the State relied on different theories to support counts I and II. Count I alleged "sexual penetration," and count II alleged "sexual contact." Defendant argues the identical counts in *Foster* could only possibly have referred to separate incidents. Defendant contends this inference is not available here, where the different theories supporting count I and count II indicate the State tried to convict defendant for the same act in two different ways. For this reason, defendant claims *Foster* is not applicable.

¶ 62    Instead, defendant compares this case to *People v. Strawbridge*, 404 Ill. App. 3d 460 (2010). There, the jury found the defendant guilty of four counts of predatory criminal sexual assault of a child. *Id.* at 461. Count I alleged the defendant assaulted the victim between June 24, 1999, and March 20, 2000. Count II alleged the defendant assaulted the victim on or about March 20, 2000. *Id.* at 462. On appeal, the defendant asked the appellate court to vacate one of the convictions under the one-act, one-crime rule, arguing the jury could have found the defendant committed only one act, on March 20, 2000, but still found the defendant guilty of two crimes. *Id.* The appellate court agreed, finding it was "impossible to determine" whether the jury found the defendant guilty of one instance of assault or multiple instances, so it vacated one of the defendant's convictions. *Id.* at 463. See *Crespo*, 203 Ill. 2d at 344 (refusing to "invade the province of the jury" to decide questions of fact by allowing the State to introduce a new theory of the case on appeal). Similarly, defendant argues that here, it is "impossible to determine" whether the jury found him guilty of one instance of predatory criminal sexual assault of a child based on two theories, "sexual penetration" and "sexual contact," or whether the jury found him guilty of two separate acts. Defendant asks us to follow *Strawbridge* and vacate one of his convictions.

¶ 63    We agree with defendant. Unlike in *Foster*, where the State's two identical counts could imply only two distinct acts, here, the State's allegations in count I and count II could constitute two ways of describing the same act. Although the evidence at trial established multiple instances of assault, the State did not apportion those instances between count I and count II. As in *Strawbridge*, we cannot determine whether the jury found defendant committed one act of predatory criminal sexual assault of a child that met the requirements of both the "sexual penetration" and "sexual contact" provisions or whether the jury found defendant committed two acts of predatory criminal sexual assault of a child, one based on "penetration" and one based on

"contact." See *Strawbridge*, 404 Ill. App. 3d at 463. Therefore, the one-act, one-crime rule requires us to vacate defendant's conviction under count I.

¶ 64                                    C. Jury Instructions

¶ 65        Defendant next asks us to reverse his conviction and remand for a new trial because the jury received improper jury instructions. Juries are instructed so that, "having determined the final state of facts from the evidence, the jury may, by the application of proper legal principles, arrive at a correct conclusion according to the law and the evidence." *People v. Ramey*, 151 Ill. 2d 498, 535 (1992). On appeal, our task is to determine whether "the series of instructions, considered as a whole, fully and fairly announce the law applicable to the respective theories of the People and the defense." *People v. Terry*, 99 Ill. 2d 508, 516 (1984) (quoting *People v. Kolep*, 29 Ill. 2d 116, 125 (1963)). We generally review jury instructions for an abuse of discretion, but we consider whether the instructions accurately conveyed the law *de novo*. *People v. Green*, 2017 IL App (1st) 152513, ¶ 61.

¶ 66        Defendant first claims the State and trial court erroneously instructed the jury on count I because they did not inform the jury a finger is not an "object" and contact with a finger does not constitute "penetration" without further "intrusion." See *Maggette*, 195 Ill. 2d at 350; see also 720 ILCS 5/11-0.1 (West 2018). Because we vacate defendant's conviction for count I under the one-act, one-crime rule, we need not address this argument.

¶ 67        Defendant further claims the jury instructions for count II require reversal because the State and trial court erroneously referenced "sexual conduct." An "act of contact" is an element of predatory criminal sexual assault of a child, but "sexual conduct" is not. Rather, "sexual conduct" is an element of criminal sexual abuse and aggravated criminal sexual abuse, which the State did not allege in its information. 720 ILCS 5/11-1.40, 11-1.50, 11-1.60 (West 2018).

¶ 68    On the first day of trial, the State amended count II of the information to allege defendant committed an act of "sexual conduct" instead of "contact." In its closing argument, the State defined "sexual conduct" for the jury, and in its rebuttal, the State told the jury, "The only things that you need to deliberate and think about is whether or not the defendant sexually penetrated [H.W.] or whether he committed an act of sexual conduct with [H.W.]"

¶ 69    When the trial court instructed the jury, it provided the following instruction:

"A person commits the offense of predatory criminal sexual assault of a child (sexual conduct) when he is 17 years of age or older and knowingly commits an act of contact, however slight, between the sex organ or anus of one person and the part of the body of another for the purpose of sexual gratification or arousal of the defendant and the victim is under 13 years of age."

This instruction relied on Illinois Pattern Jury Instructions, Criminal, No. 11.103 (approved Apr. 29, 2016), except for the addition of the parenthetical "sexual conduct" in the name of the offense.

¶ 70    The trial court also instructed the jury:

"To sustain the charge of predatory criminal sexual assault of a child (sexual conduct), the State must prove the following propositions:

*First Proposition*: That the defendant knowingly committed an act of contact, however slight, between the sex organ of one person and the part of the body of another for the purposes of sexual gratification or arousal of defendant; and

*Second Proposition*: That the defendant was 17 years of age or older when the act was committed; and

*Third Proposition*: That [H.W.] was under 13 years of age when the act was committed.

If you find from your consideration of all the evidence that each one of these propositions had been proved beyond a reasonable doubt, you should find the defendant guilty."

This instruction correctly delivered Illinois Pattern Jury Instructions, Criminal, No. 11.104 (approved Apr. 29, 2016), except for the addition of the parenthetical "sexual conduct" in the name of the offense.

¶ 71    The trial court further instructed the jury:

"The term 'sexual conduct' means any intentional or knowing touching or fondling by the accused, either directly or through the clothing, of the sex organ of the victim, for the purposes of the sexual gratification or arousal of the victim or the accused."

This instruction accurately conveyed Illinois Pattern Jury Instructions, Criminal, No. 11.65D (4th ed. 2000), although, as noted above, the term "sexual conduct" does not appear in the statutory definition of predatory criminal sexual assault of a child, so this instruction was unnecessary. See 720 ILCS 5/11-1.40 (West 2018).

¶ 72    The State concedes the use of the phrase "sexual conduct" was improper, but it contends defendant invited any error. " 'Under the invited-error doctrine, a party cannot acquiesce to the manner in which the trial court proceeds and later claim on appeal that the trial court's actions constituted error.' " *People v. Cox*, 2017 IL App (1st) 151536, ¶ 73 (quoting *People v. Manning*, 2017 IL App (2d) 140930, ¶ 16). Defense counsel did not object to the jury instruction or the State's closing argument. The State contends defendant invited the error and cannot seek relief on this basis.

- 25 -

¶ 73     We disagree. Invited error requires more than simply failing to object. See *People v. Harvey*, 211 Ill. 2d 368, 385 (2004) ("A defendant's failure to object at trial and to raise the issue in a post-trial motion operates as a waiver of the right to raise the issue as a ground for reversal on review," but "a defendant's invitation or agreement to the procedure later challenged on appeal 'goes beyond mere waiver.' ") (quoting *People v. Villarreal*, 198 Ill. 2d 209, 227 (2001)). The State offers no additional basis to find defendant invited the improper instruction on count II, so we find no invited error.

¶ 74     By failing to raise a timely objection at trial, defendant did not invite the error, but he did forfeit his claim. See *People v. Harding*, 2012 IL App (2d) 101011, ¶ 16. Defendant asks us to review for plain error. Under Illinois Supreme Court Rule 451(c) (eff. Apr. 8, 2013), "substantial defects" in jury instructions in criminal cases "are not waived by failure to make timely objections thereto if the interests of justice require." Rule 451(c) "is coextensive with the 'plain error' clause of [Rule 615(a)], and we construe these rules identically." *People v. Radford*, 2020 IL 123975, ¶ 46; see Ill S. Ct. R. 615(a) (eff. Jan. 1, 1967).

¶ 75     Defendant contends the trial court's instructions on count II warrant reversal under both prongs of plain error. See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967); *Piatkowski*, 225 Ill. 2d at 565. Starting with the first prong, defendant argues the evidence in this case was closely balanced, and he cites *People v. Sebby*, 2017 IL 119445. Defendant contends this case presents "a classic contest of credibility," requiring the jury to weigh H.W.'s allegations and her credibility against defendant's denial and his credibility. He claims H.W.'s credibility was weakened by vagueness and inconsistency in her allegations, so the evidence was closely balanced, and the erroneous instructions "alone severely threatened to tip the scales of justice." *Id.* ¶ 51.

¶ 76    We find the evidence on count II was not closely balanced. Throughout her testimony and her CAC interview, H.W. was clear and consistent in her claim defendant touched her vulva with his finger as soon as she exited the shower. This unambiguous evidence clearly established "sexual contact." H.W.'s narrative was supported by testimony from Elayne, Mayer , and Stevens, showing H.W.'s distress and the consistency of her account.

¶ 77    We do not agree with defendant's characterization of this case as "a classic contest of credibility" when defendant presented hardly any evidence of his own. In *Sebby*, the supreme court found the evidence was closely balanced because two police officers testified to one plausible version of events, but two witnesses for the defense testified to another plausible version, and neither account was corroborated by additional evidence. *Id.* ¶ 61. Here, however, the only denial of H.W.'s claims came from Detective Reed's account of defendant's denial of any touching. Defendant did not take an oath to tell the truth before his interview with Detective Reed, as H.W. did before testifying. Defendant did not provide any statement of his own directly to the jury, and he was not subject to cross-examination. Instead, his denial came secondhand through Detective Reed's memory of his interview over a year before trial. Detective Reed testified defendant made a general denial of any contact, without many details. What additional information defendant provided to Detective Reed included inconsistent accounts of how he would prepare showers for the children. The only witness defendant called was Allen, whose testimony did not directly refute H.W.'s claims. The entirety of the evidence only barely included any denial of H.W.'s allegations and that general denial does not turn this case into a "credibility contest."

¶ 78    We find this case more closely resembles *People v. Williams*, 2022 IL 126918. There, a jury found the defendant guilty of three counts of predatory criminal sexual assault of a child and three counts of criminal sexual assault (720 ILCS 5/12-13(a)(3) (West 2004)). *Williams*,

2022 IL 126918, ¶ 1. After the victims testified to the sexual assaults, the defense counsel cross-examined them regarding their previous denials of any assault. *Id.* ¶¶ 8-22. But the defendant did not testify and introduced no other evidence to contradict the victims' allegation. *Id.* ¶ 26. On appeal, the defendant alleged the prosecutor made improper statements in closing argument that warranted reversal as first-prong plain error, but the supreme court disagreed. *Id.* ¶ 47. In finding no prejudice, the supreme court determined there was no "credibility contest." *Id.* ¶¶ 60-61. The court explained, "The defendant was under no obligation to testify, but his decision not to do so, along with the lack of any other evidence in his favor," meant the jury heard only the victims' accounts. *Id.* ¶ 61. Despite the victims' initial denials, the evidence was not "closely balanced," so the court found no plain error. *Id.* ¶ 64.

¶ 79 Admittedly, the record in *Williams* did not include any statement by the defendant denying the allegations. Here, at least, Detective Reed testified defendant generally denied the allegations in his interview. Nevertheless, we do not find defendant's general out of court denial, made over a year before trial and without any oath, containing some inconsistency, and reported only by Detective Reed, sufficient to create a contest of credibility. Rather, much like in *Williams*, "defendant was under no obligation to testify, but his decision not to do so," along with hardly any other evidence in his favor, forecloses a finding that the evidence was closely balanced. See *id.* ¶ 61.

¶ 80 Alternatively, defendant claims the trial court's erroneous instruction and the State's incorrect comments constituted second-prong plain error. To prevail, "defendant must show that the alleged instructional error 'create[d] a serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial.' " *People v. Durr*, 215 Ill. 2d 283, 299 (2005) (quoting *People v.*

*Hopp*, 209 Ill. 2d 1, 8 (2004)). "This standard is a difficult one to meet," and "[e]ven an incorrect instruction on an element of the offense is not necessarily reversible error." *People v. Sargent*, 239 Ill. 2d 166, 191 (2010); see *People v. McDonald*, 2023 IL App (4th) 221014-U, ¶ 54.

¶ 81          Defendant relies on *People v. Hobbs*, 2022 IL App (4th) 210471-U. There, the defendant was convicted of home invasion and three counts of predatory criminal sexual assault of a child. *Id.* ¶ 2. Count II of the information alleged the defendant committed an act of sexual penetration when he "placed his finger in the vagina of" the minor victim. *Id.* ¶ 5. The trial court instructed the jury, "The term 'sexual penetration' means any contact, however slight, between an object, the sex organ or anus of one person and the sex organ, mouth or anus of another person." *Id.* ¶ 29. However, a finger does not constitute an "object" within this definition, and "sexual penetration" involving a finger requires "intrusion" beyond contact. *Id.* ¶¶ 21, 29; see *Maggette*, 195 Ill. 2d at 350. The State and court failed to instruct the jury on the "intrusion" requirement. *Hobbs*, 2022 IL App (4th) 210471-U, ¶ 29. The State repeated the misleading instruction during closing arguments. *Id.* ¶ 31. On appeal, the defendant argued the jury instruction was improper. We agreed, finding the instruction "misinformed the jury of what the State had to prove." *Id.* ¶ 31. We reasoned, "The jury did not have a legal principle applicable to the evidence presented," and "Without having the proper legal principle to apply to the facts before it, the jury could never arrive at the correct conclusion." *Id.* Therefore, we found the erroneous instruction constituted plain error. *Id.* ¶ 32.

¶ 82          Defendant argues that, as in *Hobbs*, the incorrect jury instruction here misinformed the jury on an essential element of the offense, particularly because "sexual conduct" includes contact through clothing, whereas predatory criminal sexual assault of child based on contact requires "skin-to-skin" contact. See *Currie*, 2023 IL App (2d) 220114, ¶¶ 41-42. Defendant argues

the trial court's improper instruction to the jury, combined with the State's improper closing argument, threatened the integrity of the judicial process, regardless of the closeness of the evidence. See *Hobbs*, 2022 IL App (4th) 210471-U, ¶ 32.

¶ 83    We do not find the inclusion of the phrase "sexual conduct" constituted second-prong plain error. Unlike the erroneous instruction in *Hobbs*, the trial court's instruction on count II correctly informed the jury what the State needed to prove. The court instructed the jury, "A person commits the offense of predatory criminal sexual assault of a child, sexual conduct, when he is 17 years of age or older and knowingly commits an act of *sexual contact*, however slight." (Emphasis added). The court also told the jury, to sustain a conviction under count II, "the State must prove the following propositions: First proposition, that the defendant knowingly committed an *act of contact*, however slight, between the sex organ of one person and the part of the body of another for the purpose of sexual gratification or arousal of the defendant." (Emphasis added). Although the trial court improperly included the phrase "sexual conduct" in the title of the offense, it did not say the State needed to prove "sexual conduct." Instead, it clearly stated the State needed to prove "contact." Moreover, although the State improperly used the phrase "sexual conduct" in its closing argument, it also told the jury it needed to prove defendant "knowingly committed an act of *contact*." (Emphasis added). Finally, any ambiguity over whether the "contact" needed to be skin-to-skin or through clothing was merely theoretical. Here, H.W. said defendant touched her as she was exiting the shower and he put his finger "inside" her "private spot." Because the jury instruction correctly conveyed that the State needed to prove "contact" and the evidence showed defendant committed an act of skin-to-skin contact, any instructional error was *de minimis*, and we find no second-prong plain error. See *Durr*, 215 Ill. 2d at 308.

¶ 84        Defendant also asks us to reverse for ineffective assistance of counsel. Criminal defendants have a constitutional right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *Strickland v. Washington*, 466 U.S. 668, 687-689 (1989); *People v. Albanese*, 104 Ill. 2d 504, 526 (1984). To prevail on his claim, defendant must show his "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. He must also demonstrate he suffered prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* We review defendant's ineffective assistance claim *de novo*. *People v. Bates*, 2018 IL App (4th) 160255, ¶ 46.

¶ 85        We find no prejudice. As explained above, we do not find the evidence in this case was closely balanced. The evidence clearly established defendant committed an act of skin-to-skin contact with H.W.'s sex organ. The trial court clearly instructed the jury that the State needed to prove defendant committed "an act of contact," not conduct. We do not find defense counsel's failure to object to the improper references to "conduct" affected the outcome, so we find no prejudice. Because defendant failed to establish that he was prejudiced, his ineffective assistance claim necessarily fails. See *People v. Brown*, 2024 IL 129585, ¶ 28 ("A defendant must satisfy both prongs of the *Strickland* standard, and the failure to satisfy either prong precludes a finding of ineffective assistance of counsel.").

¶ 86                                    D. Evidentiary Rulings

¶ 87        Defendant argues he received ineffective assistance of counsel because his attorney unreasonably failed to move to suppress evidence of Detective Reed's interview with him. The standard of review for defendant's ineffective assistance claim is *de novo*. *Id.* To show ineffective

assistance of counsel, a "[d]efendant must overcome the strong presumption that the challenged action or inaction may have been a result of sound trial strategy." *People v. Peck*, 2017 IL App (4th) 160410, ¶ 29. We review a trial court's evidentiary rulings for an abuse of discretion. *People v. Stowe*, 2022 IL App (2d) 210296, ¶ 51.

¶ 88     Detective Reed interviewed defendant at the Lincoln Police Department soon after receiving the report of the alleged assault in September 2019. He testified that, at that interview, defendant told him he babysat for H.W. and A.W. and, at bedtime, the children showered and got ready for bed on their own. At first, defendant said he only turned the water on for them in the shower and Elayne laid out clothes for them. Detective Reed testified, after additional questioning, defendant said he would lay out clothes for the children on the sink. He denied ever helping the children shower, drying them off, or touching them. Detective Reed testified he asked defendant what should happen to people who touch children, and defendant answered, " '[I]f they did it once, they should be told not to do it again. If they did it more than once or thought about it all the time, they should receive counseling.' "

¶ 89     Defendant claims his attorney should have moved to suppress this testimony. Section 103-2.1(b-5)(1) of the Code of Criminal Procedure of 1963 provides statements in custodial interrogations made by defendants accused of predatory criminal sexual assault of a child are presumptively inadmissible as evidence unless they are electronically recorded. 725 ILCS 5/103-2.1(b-5)(1) (West 2022). Defendant argues his interview with Detective Reed was a custodial interrogation and his statements were not recorded, so those statements were not admissible as evidence. Defendant further argues those statements caused prejudice. The State relied on those statements and their inconsistencies in its closing argument, and it emphasized

defendant's statement that perpetrators of sexual assault against children should be admonished and given therapy.

¶ 90        Defendant's argument fails to overcome the presumption of sound trial strategy. Generally, an attorney's decision whether to file a motion to suppress is "a matter of trial strategy, which is entitled to great deference." *Peck*, 2017 IL App (4th) 160410, ¶ 29 (quoting *People v. Bew*, 228 Ill. 2d 122, 128 (2008)). "The only exception to this [general] rule is when counsel's chosen trial strategy is so unsound that counsel entirely fails to conduct any meaningful adversarial testing." *People v. Brown*, 2018 IL App (4th) 160288, ¶ 47 (quoting *People v. West*, 187 Ill. 2d 418, 432-33 (1999)). Here, defendant did not testify. The only witness who testified on defendant's behalf was Allen, and she acknowledged defendant sometimes babysat the children without her being present. The only statement introduced into evidence by any witness denying H.W.'s claims came from Detective Reed's summary of defendant's denial of the allegations during his interview. Without Detective Reed's account of defendant's denial, the jury would have heard only H.W.'s claim and no denial whatsoever.

¶ 91        To the extent Detective Reed's account could hurt defendant's case, defense counsel cross-examined Detective Reed. He acknowledged his only record of the interview was his report and his memory, but he also confirmed defendant consistently denied trying to help the children shower, drying them, or touching H.W. In her closing statement, defense counsel questioned Detective Reed's credibility while highlighting that defendant denied the allegations "adamantly" during his interview. Because defense counsel conducted meaningful adversarial testing of the harmful aspects of Detective Reed's testimony and otherwise used his testimony to deny the State's claims, we follow the general presumption that defense counsel acted based on a sound trial strategy.

¶ 92     Defendant further argues the statement about what should happen to people who assault children was irrelevant and the trial court should have excluded that evidence. Defense counsel objected to this testimony as irrelevant. The court, not yet having heard the full answer to the question, allowed the testimony to continue because "it could be against his interest." Defense counsel did not file a posttrial motion, so she did not preserve this issue. *Enoch*, 122 Ill. 2d at 186; *Harding*, 2012 IL App (2d) 101011, ¶ 16.

¶ 93     Defendant argues the trial court abused its discretion and we should reverse for either plain error (see *Sebby*, 2017 IL 119445, ¶ 48; Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967)) or ineffective assistance of counsel (see *Strickland*, 466 U.S. at 688-94). Illinois Rule of Evidence 402 (eff. Jan. 1, 2011) provides, "Evidence which is not relevant is not admissible." Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011). That a speaker made a statement against his own interest is an exception to the rule against hearsay but not the rule against irrelevant evidence. See Ill. R. Evid. 804(b)(3) (eff. Jan. 1, 2011). Defendant argues evidence of potential sentences for a crime is irrelevant to whether a defendant committed the alleged crime. He argues a person need not have committed a sex crime to have a lenient view on punishment for such crimes. He further argues Detective Reed's question did not clearly convey what kind of "touching" he was discussing.

¶ 94     The trial court did not abuse its discretion. We find the notion defendant did not know what kind of "touching" Detective Reed meant to be entirely implausible. When defendant was asked to come to the police station and was interviewed about allegations of "touching" a child as she exited the shower, defendant must have understood Detective Reed was referring to abuse. Defendant's response, that the perpetrator should be admonished or receive therapy,

confirms he recognized the deviant nature of the alleged touching. Moreover, when Detective Reed questioned defendant in a police interview room about allegations he touched H.W., his extremely lenient view of sexual abuse could have showed his consciousness of his guilt, or at least the trial court's decision was not an abuse of discretion for this reason. See *People v Faletti*, 215 Ill. App. 3d 61, 64 (1991) ("[T]he important question is the correctness of the trial court's ruling and not the correctness of its reasoning in reaching that result."). Because the trial court did not abuse its discretion, we find no plain error or ineffective assistance of counsel. See *People v. Miller*, 2014 IL App (2d) 120873, ¶ 19 (without error, there can be no plain error or ineffective assistance of counsel).

¶ 95                                    E. State's Rebuttal

¶ 96          In his rebuttal argument, the prosecutor told the jury:

>          "The absolute horror that this child must have felt knowing she had to go take a shower with the defendant in the home. In the CAC interview, she described the defendant as wearing a gray T-shirt and long black pants. That is the same outfit the defendant wore to court on Monday, perhaps hoping to terrorize her one more time."

¶ 97          Defendant argues this accusation was so improper and inflammatory as to deny him a fair trial. "Closing argument must serve a purpose beyond inflaming the emotions of the jury." *People v. Wheeler*, 226 Ill. 2d 92, 128-29 (2007). Defendant argues the State's comment about his clothes was highly speculative because the State had no basis to presume defendant chose his outfit with malicious intent. He claims H.W. did not even testify on the Monday he wore this outfit, so the State's claim was nonsensical. Defendant further claims this case was a "credibility contest," and the prosecutor's improper statement materially affected the trial because it impacted

defendant's credibility. Defendant contends the jury might have viewed his denial of the allegations in a more sympathetic light without this inflammatory remark.

¶ 98        The supreme court has reviewed allegations of improper remarks at closing argument under both the *de novo* and abuse of discretion standards of review. *Id.* at 121; *People v. Blue*, 189 Ill. 2d 99, 128 (2000). We have noted the conflict. *People v. Anderson*, 2018 IL App (4th) 160037, ¶ 47. Regardless of the standard of review, defendant forfeited this issue, and we find no prejudice.

¶ 99        "[P]rosecutors are generally accorded wide latitude in the content of their closing arguments." *People v. Runge*, 234 Ill. 2d 68, 142 (2009). "Reviewing courts will consider the closing argument as a whole, rather than focusing on selected phrases or remarks, and will find reversible error only if the defendant demonstrates that the improper remarks were so prejudicial that real justice was denied or that the verdict resulted from the error." *Id.* "Misconduct in closing argument is substantial and warrants reversal and a new trial if the improper remarks constituted a material factor in a defendant's conviction." *Wheeler*, 226 Ill. 2d at 123.

¶ 100        Defendant did not preserve his issue, so he asks us to review it under the first prong of plain error and for ineffective assistance of counsel. As explained above, we do not find the evidence in this case was closely balanced, so we reject defendant's claim of first-prong plain error.

¶ 101        Regarding ineffective assistance of counsel, we find defendant was not prejudiced by his attorney's failure to object to the prosecutor's remark. The remark was only a brief aside, entirely detached from the focus of the State's closing argument, the defense's closing argument, and the State's rebuttal. See *People v. Jackson*, 2020 IL 124112, ¶ 87. If the prosecutor's remark was as speculative and nonsensical as defendant argues, the jury may have disregarded it. As

explained above, we would not characterize this case as a "credibility contest" when defendant never testified under oath, his only denial of the allegations came from Detective Reed's memory of his interview from over a year prior, in which he denied any improper touching at all, and defendant's sole witness at trial did not directly contradict H.W.'s claims. When H.W.'s testimony was reinforced by testimony from Elayne, Mayer, and Stevens, and defendant introduced hardly any evidence of his own, we find the prosecutor's stray remark was inconsequential and caused no prejudice.

¶ 102                                    F. Cumulative Effect

¶ 103        Defendant contends that if none of the errors referenced above alone is sufficient to reverse, the cumulative effect of those errors denied him a fair trial. Although "individual trial errors may not require a reversal, those same errors considered together may have the cumulative effect of denying defendant a fair trial." *People v. Speight*, 153 Ill. 2d 365, 376 (1992); see *United States v. Allen*, 269 F.3d 842, 847 (7th Cir. 2001) ("Cumulative errors, while individually harmless, when taken together can prejudice a defendant as much as a single reversible error and violate a defendant's right to due process of law.") (citing *Taylor v. Kentucky*, 436 U.S. 478, 487 n.15 (1978)); *People v. Stevens*, 2018 IL App (4th) 160138, ¶ 75.

¶ 104        To reiterate, defendant contends the trial court incorrectly instructed the jury, erroneously admitted certain out of court statements, and allowed the State to make improper inflammatory remarks in its rebuttal. Defendant contends each of these errors unfairly diminished defendant's credibility in the eyes of the jury, and this case was a "credibility contest" between defendant and H.W., so together the errors tipped the balance against him and denied him a fair trial.

¶ 105　　　　　　Initially, we note we found no error regarding the out of court statements. This leaves the jury instructions and the prosecutor's comments to consider. As explained above, the improper jury instructions are insufficient for the reversal of count II. The prosecutor's brief aside during rebuttal was immaterial, and we find it contributes practically nothing to the overall unfairness of the trial. Finally, as explained above, characterizing this case as a "credibility contest" is inappropriate, and we do not find the evidence was closely balanced, so we do not find the errors denied defendant a fair trial, even cumulatively.

¶ 106　　　　　　　　　　　　　　G. Sentencing

¶ 107　　　　　　Defendant challenges the trial court's sentence of 12 years and 6 months' imprisonment. "Imposition of a sentence is normally within a trial court's discretion." *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8. Nevertheless, "whether a court relied on an improper factor in imposing a sentence ultimately presents a question of law to be reviewed *de novo*." *Id.*

¶ 108　　　　　　Defendant argues the trial court improperly increased his sentence based on the harm his offense caused to H.W. Section 5-5-3.2 of the Unified Code of Corrections (Unified Code) indicates, in imposing a sentence, courts may consider if "the defendant's conduct caused or threatened serious harm." 730 ILCS 5/5-5-3.2 (West 2022). A court may not, however, enhance a defendant's sentence based on serious harm that is inherent in the offense. *People v. Schutz*, 201 Ill. App. 3d 154, 161 (1990). Defendant contends the conduct the State alleged could, at most, satisfy the minimum requirements of predatory criminal sexual assault of a child, but the State did not prove any conduct that would establish a greater degree of harm than is inherent in the offense. Similarly, although the evidence at sentencing showed H.W. suffered from mental distress and sought treatment, defendant contends the harm H.W. suffered was not "particularly severe" and did not fall "outside the norm from the kind of harm inherent in the offenses charged." Defendant

did not preserve this issue, but he asks us to review it for plain error and ineffective assistance of counsel.

¶ 109    In *People v. Muraida*, 2021 IL App (4th) 180650-U, we conclusively rejected defendant's view. There, the defendant was convicted of predatory criminal sexual assault, and the trial court considered the "long-term emotional damage to the victim" as an aggravating factor at sentencing. *Id.* ¶ 24. On appeal, the defendant argued the trial court improperly enhanced his sentence based on harm inherent in the offense. *Id.* ¶ 55. We disagreed, stating, "Psychological trauma to a victim can be considered as an aggravating factor even without direct evidence of trauma." *Id.* ¶ 60. We added, "Harm is not an element or inherent in the offense," and "most cases addressing this issue have found the psychological harm suffered by child victims of sexual assault proper for consideration in sentencing." *Id.* ¶ 61 (citing *People v. Nevitt*, 228 Ill. App. 3d 888, 892 (1992); *People v. Ulmer*, 158 Ill. App. 3d 148, 151 (1987); *People v. Burton*, 102 Ill. App. 3d 148, 153 (1981)).

¶ 110    Defendant contends our decision in *Muraida* conflicts with the supreme court's decision in *People v. Huddleston*, 212 Ill. 2d 107 (2004), but this contention is wrong. In *Huddleston*, the trial court found the defendant guilty of three counts of predatory criminal sexual assault. *Id.* at 110. At the time of the trial, section 12-14.1(b)(1.2) of the Code mandated a sentence of natural life imprisonment for a defendant convicted of predatory criminal sexual assault of two or more children. *Id.*; 720 ILCS 5/12-14.1(b)(1.2) (West 2002). On appeal to the supreme court, the defendant argued this sentencing statute violated the proportionate penalties clause of the Illinois Constitution. *Huddleston*, 212 Ill. 2d at 129; Ill. Const. 1970, art. I, § 11. As part of its analysis, the supreme court looked at the "seriousness of the offense," including "the degree of harm." *Huddleston*, 212 Ill. 2d at 129. The court surveyed other court decisions, statutes, and

scholarship demonstrating the unique vulnerability of children and the "paramount importance" of ensuring their welfare. *Id.* at 133-141. The court observed, "Commentators have recognized that, aside from any *physical* injury a child may suffer in a sexual assault, children who are sexually assaulted are subject to chronic *psychological* problems that may be even more pernicious." (Emphases in original.) *Id.* at 135.

¶ 111 The court did not, at any point in its lengthy analysis, address the question posed in *Muraida*—whether psychological harm to a victim of predatory criminal sexual assault is a proper aggravating factor at sentencing. The court did not analyze or interpret section 5-5-3.2(a)(1) of the Unified Code, which specified "serious harm" as an aggravating factor, even when *Huddleston* was decided. See 730 ILCS 5/5-5-3.2(a)(1) (West 2004); see also 730 ILCS 5/5-5-3.2(a)(1) (West 2022). Nor did the court specify what baseline degree of psychological harm a survivor of predatory criminal sexual abuse should be expected to suffer, so that we could determine whether the harm H.W. was "particularly severe" or fell "outside the norm from the kind of harm inherent in the offense," as defendant requests. *Huddleston*'s conclusion that "[t]he harm to the child victim of sexual abuse—and to society itself—is well documented" does not decide the legal question before us now or in *Muraida*. *Huddleston*, 212 Ill. 2d at 136. Therefore, following *Muraida* and the many cases cited therein, we find psychological harm suffered by child victims of predatory criminal sexual assault is a proper aggravating factor at sentencing. *Muraida*, 2021 IL App (4th) 180650-U, ¶ 61.

¶ 112 Although direct evidence was not necessary to show H.W. suffered trauma from defendant's conduct (see *id.* ¶ 60; see also *Burton*, 102 Ill. App. 3d at 154), the record here contains such evidence. At trial, Elayne testified she saw H.W. become withdrawn and refuse to take showers and H.W. began meeting with a counselor. At sentencing, Elayne told defendant she had

to "call for help late at night because [H.W.] won't stop banging her head against the wall to make the thoughts of [him] stop." H.W. provided her own statement through a victim coordinator, stating she has nightmares and does not like to sleep. She hates showers because they "bring[ ] back the thoughts." She sees a counselor, and "[i]t's hard for [her] to trust people." After hearing this evidence, the trial court rightly treated the harm defendant caused as an aggravating factor at sentencing. We find no error, so we find no plain error or ineffective assistance of counsel.

¶ 113                                    III. CONCLUSION

¶ 114          For the reasons stated, we affirm defendant's conviction and sentence for count II but vacate defendant's conviction for count I.

¶ 115          Affirmed in part and vacated in part.